UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KATIE E. B.,<br><br>                        Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1] *Acting Commissioner of Social Security*,<br><br>                        Defendant. | Case No.:  20cv2354-MDD<br><br>**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW IN FAVOR OF PLAINTIFF AND REMANDING TO THE COMMISSIONER**<br><br>[ECF No. 15] |

Katie E. B. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income under Titles II and XVI of the Social Security

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and is therefore substituted for Andrew M. Saul as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Act ("Act").  (ECF No. 1; AR at 21, 42).[2]  On June 7, 2022, the parties filed a Joint Motion for Judicial Review of the Administrative Law Judge's ("ALJ's") decision.  (ECF No. 15).

For the reasons herein, the Joint Motion for Judicial Review is **GRANTED** in favor of Plaintiff.  The Court **REVERSES** the decision of the Commissioner denying benefits and **REMANDS** the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with the findings presented herein.

## I. BACKGROUND

### A.    Procedural History

Plaintiff alleges a disability beginning on November 20, 2017.  (AR at 392, 399).  Plaintiff's claims were denied initially on November 1, 2018, and upon reconsideration on June 11, 2019.  (AR at 248, 268, 295, 319-20).  Plaintiff filed a written request for a hearing on August 5, 2019.  (AR at 337-38).

An administrative hearing was held by telephone on May 29, 2020.  (AR at 183-228).  Plaintiff appeared and was represented by attorney Devin DeLoa.  (AR at 185).  Testimony was taken from Plaintiff and Connie Guillory, an impartial vocational expert ("VE").  (*See* AR at 183-228).  On July 2, 2020, the ALJ issued a decision denying Plaintiff's claims.  (AR at 18-49).

On August 18, 2020, Plaintiff filed a request for review with the Appeals Council.  (AR at 8-10).  On October 6, 2020, the Appeals Council denied the request for review and declared the ALJ's decision to be the final

---

[2] "AR" refers to the Certified Administrative Record filed on December 15, 2021.  (ECF No. 8-10).

decision of the Commissioner in Plaintiff's case.  (AR at 1).  This timely civil action followed.

## II. DISCUSSION

### A.   Legal Standard

Sections 405(g) and 1383(c)(3) of the Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Courts look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id.*  "[T]he threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme Court] has said, is 'more than a mere scintilla.'  It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.*  The Ninth Circuit explains that substantial evidence is "more than a mere scintilla but may be less than a preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*.

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  *Id.*  "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing

the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul,* 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)).  The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.*  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Mayes*, 276 F.3d at 459.

Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administration for further proceedings.  *Id.*

**B.    Summary of the ALJ's Findings**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 20, 2017.  (AR at 24).

At step two, the ALJ found that Plaintiff had the following severe impairments: "hypermobile Ehlers-Danlos Syndrome; hyperadrenergic postural orthostatic tachycardia/POTS; medial meniscus tear of left knee; endometriosis; depressive disorder; post-traumatic stress disorder (PTSD); anxiety disorder; insomnia; attention deficit hyperactivity disorder (ADHD)." (AR at 24-26).  The ALJ determined "the medically determinable impairments of eosinophilic esophagitis, GERD, bilateral carpal tunnel syndrome, mild degenerative disc disease (DDD) of the lumbar, thoracic and cervical spine, umbilical hernia, migraines, bilateral tinnitus, and

appendiceal neoplasm do not significantly limit the claimant's basic work activities." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments.  (AR at 26-28).

Next, after considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> The claimant must avoid concentrated exposure to extreme cold, to extreme heat, to wetness, to humidity, to vibration, to fumes, odors, gases and other pulmonary irritants, and to hazards such as operational control of moving machinery and unprotected heights. In addition, the claimant is limited to understanding, remembering, and carrying out simple, routine tasks, only occasional interaction with the general public.  The individual would require the use of a walker to ambulate any distance greater than 10 feet.

(AR at 28).

The ALJ stated that his RFC assessment was based on all the evidence and the extent to which Plaintiff's symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  (*Id.*).  The ALJ also stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c.  (*Id.*).

The ALJ then proceeded to step four of the sequential evaluation process.  He found Plaintiff was unable to perform her past relevant work.  (AR at 40).  The ALJ classified Plaintiff as a younger individual because she was 28 years old on the alleged disability onset date.  (*Id.*) (citing 20 C.F.R. §§ 404.1563, 416.963).  Plaintiff was born in 1989.  (*Id.*).  For the purposes of his

1  step five determination, the ALJ accepted the testimony of the VE.  (AR at

2  41-42).  The VE identified the jobs of inspector (DOT 669.687-014); sealer

3  (DOT 559.687-014); and stim mounter (DOT 725.684-018) as representative

4  jobs Plaintiff could perform, and which exist in significant numbers in the

5  national economy.  (AR at 41).  The ALJ therefore found that Plaintiff was

6  not disabled.  (AR at 42).

### C.   Issues in Dispute

The issues in dispute are (1) whether the ALJ harmfully erred by failing
to consider Plaintiff's somatic symptom disorder; (2) whether the ALJ
properly evaluated Plaintiff's subjective symptom testimony; (3) whether the
ALJ properly formulated the RFC where all of the medical opinions were
rejected; and (4) whether the ALJ sufficiently incorporated limitations
related to Plaintiff's migraines and carpal tunnel syndrome in the RFC.[3]

### 1.   Somatic Symptom Disorder

Plaintiff argues that the ALJ erred by failing to mention or discuss her
somatic symptom disorder.  (ECF No. 15 at 16).  Plaintiff contends a somatic
symptom disorder impairment is established overtly through diagnosis, as
well as impliedly through both her medical record of numerous tests that fail
to return diagnoses and her hearing testimony which demonstrates
preoccupation with having or acquiring a serious medical condition.  (ECF
No. 15 at 16, 20).  Plaintiff argues this was harmful error because it affected
the ALJ's consideration of the medical evidence and Plaintiff's symptom
testimony, the RFC determination, and the ALJ's ultimate non-disability

---

[3] The numbering of issues has been changed from the parties' Joint Motion for Judicial
Review (ECF No. 15 at 3) to reflect the sequence in which the issues are discussed in this
Order.

finding.  (ECF No. 15 at 20).

The Commissioner argues the ALJ considered Plaintiff's reports of pain, fatigue, and weakness and accounted for attendant limitations in Plaintiff's RFC.  (*Id.*).  The Commissioner further argues Plaintiff linked her alleged symptoms to Ehlers Danlos Syndrome, which the ALJ found to be a severe impairment.  (*Id.*).  Therefore, the Commissioner contends any error was harmless.  (*Id.*).

      a.    Discussion of Somatic Symptom Disorder at Step Two

Step two of the ALJ's analysis, meant only to dispose of groundless claims, imposes a *de minimis* standard for establishing medically determinable impairments ("MDIs").  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  MDIs are established by "anatomical, physiological, or psychological abnormalities" demonstrated via objective medical evidence.  20 C.F.R. §§ 404.1521, 416.921.  While a claimant's statements and medical sources' diagnoses are not sufficient to establish an MDI, diagnoses can be sufficient to mandate discussion of an impairment at step two.  *See id.*; *Dunn v. Colvin*, No. 13-CV-05088 JRC, 2014 WL 1053273, at *3 (W.D. Wash. Mar. 19, 2014) (finding that single diagnosis of a hypochondriasis disorder mandated discussion at step two).

Disorders such as "somatic symptom disorder, illness anxiety disorder, and conversion disorder" are grouped together under the listing of "somatic symptom and related disorders" within the Commissioner's Listing of Impairments.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(B)(6)(a).  The signs and symptoms of somatic symptom and related disorders include "pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or

deafness." *Id.*  These symptoms are "not intentionally produced or feigned" and "cannot be fully explained by a general medical condition [or] another mental disorder." *Id.*

The Court's review of the record reveals one definitive diagnosis of "somatoform disorder, unspecified" by Dr. Jeffrey Cullen and two suspected diagnoses of "conversion disorder" by Drs. Sara Siavoshi and Kaitlin McIntyre.  (AR at 674, 1162, 2200, 3228).  Yet the ALJ's decision failed to mention somatic symptom or related disorders at any point, despite citing to the page on which Dr. Cullen diagnoses a somatoform disorder, and to the March 6, 2018 visit notes in which Dr. Siavoshi's assessment states, "I do suspect conversion disorder."  (AR at 30) (citing AR at 674, 1158, 1161).  Plaintiff's record includes a multitude of objective indications of "pain and other abnormalities of sensation," "high level of anxiety about personal health status," and "abnormal motor movement," among other signs and symptoms associated with somatic symptom disorder.  (*See, e.g.*, AR at 674, 678, 794, 799, 805, 818, 831, 1313, 2200, 2334, 3228).

Alternative explanations for these symptoms might exist.  The Commissioner notes, for instance, that Plaintiff "appears to link these alleged symptoms to Ehlers Danlos Syndrome" rather than somatic symptom disorder.  (ECF No. 15 at 20).  It is possible the ALJ interpreted the record as such, but the Court will not "affirm the ALJ on a ground upon which he did not rely." *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

The Court finds that the evidence on the record warranted discussion of whether somatic symptom disorder is a medically determinable impairment at step two.  The ALJ should have explained whether Plaintiff has a medically determinable impairment of somatic symptom disorder, and if so, assessed its severity at step two. *See, e.g., John A. v. Saul*, No. C18-5982-

8

MAT, 2019 WL 2616594, at *3 (W.D. Wash. June 26, 2019); *Adila B. v. Kijakazi*, No. 4:20-cv-5171-EFS, 2022 U.S. Dist. LEXIS 33607, at *18-19 (E.D. Wash. Feb. 25, 2022).  The ALJ's failure to do so was error.

The Court further concludes this error was not harmless.  "An error is harmless only if it is inconsequential to the ultimate nondisability determination."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

> [S]omatic symptom and other disorders can serve to give credence to alleged symptoms that would be otherwise rejected as unsubstantiated and/or as malingering; the very nature of this group of disorders means that if a genuine case is overlooked as a medically determinable impairment at step two, then the ALJ is unlikely to account for the corresponding symptoms at any of the later stages of the disability analysis.

*Adila B.*, 2022 U.S. Dist. LEXIS 33607, at *18-19; *see also John A.*, 2019 WL 2616594, at *3 (failure to identify or discuss somatic symptom disorder at step two was not harmless because it "impacted the subsequent consideration of the medical evidence, plaintiff's symptom testimony, the RFC assessment, and the ultimate decision of non-disability").

Accordingly, the Court finds that the ALJ's failure to discuss whether Plaintiff has an MDI of somatic symptom disorder was not harmless error and requires remand.  In particular, the ALJ did not discuss somatic symptom disorder as an alternative explanation for contradictions between Plaintiff's subjective symptom testimony and the objective medical evidence, as discussed below.  Because Plaintiff separately argues that the ALJ erred in evaluating Plaintiff's subjective symptom testimony and RFC, the Court further addresses Plaintiff's somatic symptom disorder within the context of those issues.

## 2. Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by failing to give clear and convincing reasons for rejecting her subjective symptom testimony. (ECF No. 15 at 23). She contends that inconsistency between a patient's complaints and the objective medical evidence matches the expected presentation of somatic symptom disorder. (*Id.*). Plaintiff therefore argues that the absence of any discussion of somatic symptom disorder in the ALJ's decision renders the ALJ's evaluation of Plaintiff's subjective symptom testimony unsupported by clear and convincing evidence. (*Id.*). The Commissioner counters that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom testimony. (*Id.* at 20-21).

### a. Subjective Symptom Testimony Evaluation Process

ALJs evaluate a claimant's subjective symptom testimony at step three, guiding their subsequent consideration of the claimant's testimony in making their RFC determination. *See* §§ 20 C.F.R. 404.1529(d)(4), 416.929(d)(4). ALJs assess a claimant's subjective statements regarding their symptoms and limitations in two parts. §§ 404.1529(a), 416.929(a). First, an ALJ must determine whether the claimant's MDIs "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* The ALJ then assesses to what extent the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are consistent with the record. *Id.* This assessment considers "all of the available evidence," divided into "objective medical evidence" and "other evidence." §§ 404.1529(c), 416.929(c). Objective medical evidence is "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques." §§ 404.1529(c)(2), 416.929(c)(2). "Other evidence" includes information from medical and nonmedical sources, the claimant's daily activities,

characteristics of the alleged symptoms, and treatment received to relieve the alleged symptoms.  §§ 404.1529(c)(3), 416.929(c)(3).

Where an ALJ does not determine that a claimant is malingering, a claimant's subjective symptom testimony can be found inconsistent only for "specific, clear and convincing" reasons.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

Here, the ALJ determined that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms.  (AR at 29).  He then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent" with the record. (*Id.*).  The ALJ did not determine that Plaintiff was malingering, so Plaintiff's testimony could be found inconsistent only for "specific, clear and convincing" reasons.  *See Treichler*, 775 F.3d at 1102 (citing *Smolen*, 80 F.3d at 1281).  In making his assessment, the ALJ relied largely on objective medical evidence, *i.e.*, a battery of normal test results which contradicted Plaintiff's complaints. (AR at 29-30).  The ALJ also considered "other evidence," *i.e.*, information from a medical source and information about Plaintiff's daily activities.  (AR at 30).  The Court considers each category to determine whether the ALJ offered clear and convincing evidence for rejecting Plaintiff's subjective symptom testimony.

### b.    Objective Medical Evidence

The ALJ relied in part on the contradictions between Plaintiff's complaints and the largely normal objective medical evidence in finding that

her statements regarding her symptoms were not entirely consistent with the record. (AR at 29-30). Plaintiff contends her somatic symptom disorder causes significant symptoms that the ALJ overlooked. (ECF No. 15 at 18-19, 21). There is notable overlap between the symptom testimony the ALJ rejected as unsupported and symptoms associated with somatic symptom disorder. *Compare* AR at 29-30 (rejecting complaints of abnormal motor movement, "gastrointestinal issues, fatigue and weakness, brain fog, and pain" as unsupported) *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(B)(6)(a) ("pain…other abnormalities of sensation, gastrointestinal symptoms, fatigue…abnormal motor movement [and] pseudoneurological symptoms" among symptoms of somatic symptom disorder). Had the ALJ considered somatic symptom disorder at step two and found it to be an MDI, he would have been required to consider Plaintiff's subjective symptom testimony in the context of her somatic symptom disorder. *Elliot G. v. Kijakazi*, No. 1:20-cv-1701-SI, 2022 WL 910055, at *9 (D. Or. Mar. 29, 2022) ("ALJ erred in failing to address Plaintiff's somatic symptom disorder in considering his subjective symptom testimony.").

Moreover, a lack of objective evidence supporting Plaintiff's claims of pain or symptoms may support rather than undermine a claim of disability where somatic symptom disorder is an MDI. *See Scott M. S. v. Comm'r of Soc. Sec. Admin.*, No. 3:19-cv-00812-JR, 2020 WL 1043444, at *3 (D. Or. Mar. 4, 2020) ("Thus, although the ALJ is correct that a disparity existed between plaintiff's presentation/physical complaints and certain portions of the medical record, that disparity was itself part of plaintiff's medical condition."); *John A.*, 2019 WL 2616594, at *3 (ALJ erred when, "[r]ather than considering limitations associated with a somatic symptom disorder, the ALJ utilized evidence associated with such an impairment as a reason for

rejecting plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms."). *But see Marovich v. Colvin*, 554 F. App'x 591, 592 (9th Cir. 2016) (somatic symptom disorder manifests as physical symptoms, so objective evidence is relevant).

Here, the ALJ did not address somatic symptom disorder as a possible explanation for the contradictions which he relies on to discredit Plaintiff's subjective symptom testimony. Instead, he highlights the contradictions to support his conclusion that the intensity, persistence, and limiting effects of the symptoms Plaintiff alleges are unsupported by the medical evidence. (*See* AR at 29-30). While the testimony of claimants with somatic symptom disorder or a related impairment need not be accepted uncritically, the ALJ must address the "material possibility" that discrepancies in such cases are "evidence of impairment, as opposed to evidence of malingering or exaggeration for secondary gain." *Reyes v. Colvin*, No. 2:15-CV-08726 (VEB), 2016 WL 6651259, at *5 (C.D. Cal. Nov. 9, 2016). Because the ALJ did not discuss somatic symptom disorder in his decision, the Court cannot conclude that he addressed the material possibility that the identified discrepancies can be attributed to somatic symptom disorder. Accordingly, the Court cannot find that ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony as inconsistent with the objective medical evidence.

Where the remaining evidence used to support the ALJ's assessment of Plaintiff's subjective symptom testimony is independently clear and convincing, remand is not required. *See, e.g., Downton v. Astrue*, No. 08CV2154DMS (CAB), 2009 WL 3711992, at *6 (S.D. Cal. Nov. 4, 2009) (remand unnecessary where reasons independent of objective evidence constitute substantial evidence for credibility determination); *Lee v. Astrue*,

No. 6:12-CV-00084-SI, 2013 WL 1296071, at *5 (D. Or. Mar. 28, 2013) (same). Therefore, the Court next considers the ALJ's treatment of "other evidence."

### c.    Other Evidence

Aside from the objective medical evidence, the ALJ relied on an occupational therapy evaluation and a selection of Plaintiff's statements regarding her daily activities and limitations in evaluating the consistency of Plaintiff's subjective symptom testimony.  (AR at 29-30).  A claimant's daily activities may support finding a claimant's subjective testimony inconsistent with the record where they either "contradict other testimony" or "meet the threshold for transferable work skills."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ first relied on a statement from Occupational Therapist Caitlin Muir's evaluation that Plaintiff is "0% impaired" in her daily activities.  (*See* AR at 30).  The statement was a test result on the Boston AM-PAC, a standardized occupational therapy examination.  (AR at 2362). The remark was not a subjective statement regarding a patient's actual level of impairment.  (*Id.* at 2359).  Instead, that test examined a subject's ability to get dressed, eat meals, bathe, use the toilet, and perform basic physical hygiene.  (*Id.*).  Muir's statement did not satisfy either of the *Orn* requirements.  In terms of contradicting other testimony, the ALJ placed the statement in opposition to a general claim that Plaintiff "reported limited ability to do various activities of daily living in the Function Report."  (*Id.* at 30).

Plaintiff's AM-PAC result revealed that she can accomplish these tasks without assistance, not without difficulty.  (*Id.* at 2359).  The only daily activities that Plaintiff alleged she cannot complete without assistance were going to the store, lifting a heavy recycling bin lid, and lifting heavy loads of

laundry.  (*Id.* at 461, 469).  No analogous activities were tested as part of the AM-PAC.  (*Id.* at 2359).  In the same evaluation, Muir stated that Plaintiff exhibited a "slow gait with standing rest breaks" and appeared "fatigued" during the examination, lying down immediately upon completion.  (*Id.* at 2361).  This supports rather than contradicts Plaintiff's Function Report statements regarding the severity of her alleged symptoms.  (*Id.* at 2362).  The ALJ never asserted that the evaluation spoke to Plaintiff's transferable work skills, nor did it purport to do so.  *See Orn*, 495 F.3d at 639 (transferable work skills are "the second ground for using daily activities in credibility determinations.").  Because Muir's evaluation established neither a contradiction with Plaintiff's testimony nor transferable work skills, it was not a valid basis for the ALJ to find Plaintiff's subjective symptom testimony inconsistent with the "other evidence" in the record.

The ALJ further stated that Plaintiff's statements that she can perform daily tasks around the home "on her own schedule" and can use public transportation contradict her Function Report.  (AR at 30) (citing AR at 2170).  As explained above, Plaintiff's Function Report lists only three tasks she cannot perform alone, none of which are sufficiently general or regular to contradict the statement that with "some difficulty [and] on her own schedule and timing she can undertake and perform general daily tasks and activities around the home."  (AR at 2170).  Plaintiff's Function Report simply said that "right now," taking the bus was not bearable.  Six months later she states that she could use public transportation.  (*Id.* at 469, 2170).  Minor shifts in a claimant's limitations over time are not evidence of inconsistency.  *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (citing *Leidler v. Sullivan*, 885 F.2d 291, 292 n.3 (5th Cir. 1989)).  That statement falls short of clear and convincing evidence of a contradiction.

1    Regarding work skills, the Ninth Circuit has explained that "many

2 home activities are not easily transferable to what may be the more grueling

3 environment of the workplace, where it might be impossible to periodically

4 rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

5 Evidence that Plaintiff can perform daily activities only "on her own

6 schedule" (AR at 30) demonstrates that her daily activities are likely *not*

7 "transferable work skills." *See Fair*, 885 F.2d at 603; *Orn*, 495 F.3d at 639.

8 While the ability to take public transportation might establish that Plaintiff

9 could get to a job, it does not establish what she could do once there.

10 Plaintiff's general ability to perform daily activities and ability to use public

11 transportation are not a basis for finding Plaintiff's testimony inconsistent.

12 *See Lopez v. Colvin*, 194 F. Supp. 3d 903, 912 (D. Ariz. 2016).

13    To support his finding that Plaintiff's testimony is inconsistent with the

14 record, the ALJ also relied on Plaintiff's statements that she lives alone

15 without in-home health care, recently traveled to Indiana for her father's

16 funeral, and can get herself to medical appointments.  (AR at 30).  The ALJ

17 found it contradictory that Plaintiff can do these things "despite her severe

18 symptoms."  (*Id.*).  Plaintiff flew to Indiana twice: in June of 2019 to visit her

19 gravely ill father and in October of 2019 to attend his funeral.  (*Id.* at 206-07).

20 The ALJ omitted Plaintiff's testimony that she required wheelchair

21 assistance getting through the airport and used "lots of medication and

22 muscle relaxers" to make it through the flights.  (*Id.* at 206).  The ALJ did not

23 specify how this travel undermines Plaintiff's allegations of severe symptoms.

24 (*Id.* at 30).  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)

25 ("The ALJ must specifically identify the testimony she or he finds not to be

26 credible and must explain what evidence undermines the testimony.").  The

27 Court cannot conclude that two instances of sitting down for a longer period

16

under medication call Plaintiff's credibility into question. *See, e.g.*, *Milton v. Comm'r of Soc. Sec.*, No. 6:16-CV-01902-YY, 2018 WL 1788077, at *5 (D. Or. Mar. 26, 2018), *report and recommendation adopted sub nom. Milton v. Berryhill*, No. 6:16-CV-1902-YY, 2018 WL 1787184 (D. Or. Apr. 13, 2018).

Finally, neither Plaintiff living alone nor her ability to get herself to medical appointments sufficiently contradict her alleged symptoms. Living alone is consistent with the tasks Plaintiff says she cannot perform independently in her Function Report. The capacity to live alone and to get to medical appointments is not a transferable work skill. *See Fair*, 885 F.2d at 603; *Orn*, 495 F.3d at 639. Plaintiff's flights, living alone, and attendance at medical appointments do not support the ALJ's evaluation that Plaintiff's subjective symptom testimony was inconsistent with the record. (AR at 29).

The "other evidence" the ALJ relied on is, therefore, also insufficient to meet the clear and convincing standard. Accordingly, the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms and level of limitation were not entirely consistent with the record is not supported by specific, clear, and convincing reasons. *See Garrison*, 759 F.3d at 1016. Remand is necessary for the ALJ to consider whether somatic symptom disorder is an MDI, and, if so, how it may affect the evaluation of Plaintiff's subjective symptom testimony.

### 3. RFC Determination

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because it was formulated without the support of a medical opinion and was therefore an impermissible independent interpretation of "raw medical data" into functional limitations. (ECF No. 15 at 4, 10 (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)). The Commissioner argues that a claimant's RFC is an administrative finding and

that an ALJ therefore need not rely on a medical opinion in making their assessment.  (ECF No. 15 at 6).

A claimant's RFC is determined by the ALJ and describes the most a claimant can do despite the limitations resulting from their impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC determination considers all MDIs, severe or not severe, and all relevant evidence on the record, including medical opinions from medical sources.  §§ 404.1545(a)(2)-(3), 416.945(a)(2)-(3).  Medical opinions are statements from medical sources about a claimant's abilities and limitations related to the workplace and resulting from an impairment.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

ALJs must analyze the persuasiveness of each medical source who provides one or more medical opinions based on the factors of "supportability" and "consistency."  §§ 404.1520c, 416.920c.  An ALJ may find any medical opinion that they determine to be unsupported or inconsistent to be not persuasive.  *See* §§ 404.1520c(a)-(c), 416.920c(a)-(c).  Courts equate finding a medical source "not persuasive" with rejecting any medical opinions from the source.  *See, e.g., Woods v. Kijakazi*, 32 F.4th 785, 792-94 (9th Cir. 2022); *Steven R. T. v. Kijakazi*, No. 20-CV-2257-KSC, 2022 WL 2303950, at *12 (S. D. Cal. June 24, 2022).  A medical opinion rejected by an ALJ cannot support the ALJ's RFC determination.  *See de Lopez v. Astrue*, 643 F. Supp. 2d 1178, 1183-84 (C.D. Cal. 2009) (rejecting medical opinion effectively removes it from record); *see also Smolen*, 80 F.3d at 1286 (making finding contrary to medical opinion constitutes rejection of opinion).

The absence of support from a medical opinion is "not necessarily fatal" to an ALJ's RFC determination, but does open the door to impermissible independent interpretation of medical evidence into functional limitations. *Rivera v. Berryhill*, No. ED CV 16-791-SP, 2017 WL 5054656, at *4-5 (C.D.

Cal. Oct. 31, 2017). As a layperson, an ALJ is not qualified to extrapolate functional limitations from "raw medical data" but may make reasonable inferences from medical evidence susceptible to a lay understanding. *See Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ not qualified to extrapolate functional limitations from raw medical data); *Escudero v. Comm'r of Soc.* Sec., No. 1:18-CV-01136-EPG, 2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019) (ALJ may not interpret evidence "not susceptible to a lay understanding"). "Raw medical data" is evidence from which a layperson could not reasonably infer limitations, including diagnoses, test results, X-rays, and MRIs. *See Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (citing *Escudero*, 2019 WL 4917634, at *2; *Mack v. Saul*, No. 1:18-CV-01287-DAD-BAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020)).

Here, the ALJ found one medical source, the State agency psychological consultants, "partially persuasive." (AR at 37). He found all other medical sources who issued a medical opinion "not persuasive." (*Id.* at 37-39). In support of his RFC determination, the ALJ relied upon his interpretations of, for example, diagnoses of Ehlers-Danlos syndrome, MRIs, a CT scan, an ultrasound, and physical, neurological, and rheumatological examinations with ambiguous or mixed results. (AR at 30-35) (citing, *e.g.*, AR at 614-15, 937-40, 967, 1139, 2052-53, 2419-20, 2505-06, 2561, 2577-78, 3030, 3100-02, 3519-20, 3618-19). This evidence is not susceptible to a lay understanding and does not obviously translate into functional limitations. *See Escudero*, 2019 WL 4917634, at *2. Accordingly, the Court finds that the ALJ's independent interpretation of raw medical data rendered his RFC determination unsupported by substantial evidence.

1
2
3
4
5
6
7
8
9
10
11
12
13

It is possible that the ALJ here was guided by some or all of the medical opinions he rejected, and thus did not independently interpret raw medical data.  The *Rivera* court suggests it would be permissible for an ALJ to "synthesiz[e] all the medical evidence and opinions to reach his own RFC determination," as the Commissioner suggests the ALJ did here.  *Rivera*, 2017 WL 5054656, at *5.  It appears plausible that the ALJ here attempted to reconcile highly "divergent medical opinions" to reach an RFC in the "middle ground."  (ECF No. 15 at 8).  The ALJ nowhere indicated this intent, however, and the Court will not "affirm the ALJ on a ground upon which he did not rely."  *See Garrison*, 759 F.3d at 1010.  Because "the ALJ was not qualified to translate the data into functional limitations," the ALJ's RFC determination is not supported by substantial evidence.  *See Rivera*, 2017 WL 5054656, at *5.

14
15
16
17
18
19
20
21
22
23

It is not clear to the Court that a proper interpretation of the record would necessarily support a less-restrictive RFC, thus the Court cannot conclude that this error was harmless.  *See Danielle L. v. Saul*, No. 1:18-CV-3213-FVS, 2020 WL 3619081, at *9 (E.D. Wash. Mar. 11, 2020) (citing, *e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (error supporting a less restrictive RFC is harmless because it would not affect the ultimate non-disability determination).  On remand, the ALJ is instructed to develop the record and reconsider the review of evidence as necessary to produce an RFC that does not rely on impermissible interpretations of raw medical evidence.

24
25
26
27

      a.    No Medical Opinion Regarding Somatic Symptom Disorder

Plaintiff argues that the ALJ's failure to consider somatic symptom disorder also affected the RFC, though Plaintiff's argument is not specific.  (*See* ECF No. 15 at 20).  Defendant contends, "the ALJ detailed evidence of

Plaintiff (*sic*) reports of pain, fatigue, and weakness and accounted for attendant limitations in Plaintiff's restrictive RFC." (*Id.*).  The Court has determined that somatic symptom disorder must be discussed at step two. Consequently, further development of medical opinion evidence may be necessary to determine whether changes to Plaintiff's RFC are appropriate.

Where ambiguities exist in the record, it is the ALJ's duty to resolve them by fully developing the record.  *Russell C. v. Saul*, No. 20-CV-256-MMA (RBM), 2021 WL 1116034, at *2 (S.D. Cal. Mar. 24, 2021) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Particularly where there is an "inconsistency in the evidence" or where "highly technical or specialized medical evidence that [the ALJ] need[s] is not available" from medical sources on the record, a consultative examination may be appropriate.  20 C.F.R. §§ 404.1519a(b); 416.919a(b); *see Rivera*, 2017 WL 5054656, at *3.

Inconsistencies in the evidence are characteristic of somatic symptom disorder.  *See supra* p. 12.  Despite Plaintiff's extensive record spanning over 4,000 pages, the Court is not aware of any medical source opinions that specifically address Plaintiff's functional limitations relating to somatic symptom disorder.  An additional medical examination addressing the disorder may therefore be required.  *See Jacob M. v. Comm'r, SSA*, No. 6:17-CV-02000-MC, 2019 WL 2267303, at *5 (D. Or. May 28, 2019) ("[T]he ALJ erred by failing to credit or obtain a medical source opinion addressing Plaintiff's conversion disorder.").  Accordingly, upon remand, if the ALJ determines that Plaintiff has an MDI of somatic symptom disorder, the ALJ shall either: 1) order a further consultative examination addressing the disorder, or 2) discuss why no medical opinion regarding somatic symptom disorder is necessary.

20cv2354-MDD

### 4.     Migraine and Carpal Tunnel Limitations

Plaintiff also argues that the ALJ failed to consider Plaintiff's migraine and carpal tunnel impairments in Plaintiff's RFC determination.  The Court is remanding this case so that the ALJ may consider whether somatic symptom disorder is an MDI.  This finding may require the ALJ to reconsider Plaintiff's medical evidence and testimony, including evidence and testimony related to Plaintiff's nonsevere MDIs of migraines and carpal tunnel syndrome.  On remand, the ALJ will also further develop the record and reconsider Plaintiff's RFC as necessary based on medical opinion(s) where the evidence is not susceptible to a lay understanding and does not obviously translate into functional limitations.  Because the action on remand is likely to alter the record relating to Plaintiff's alleged migraine and carpal tunnel limitations or influence the interpretation thereof, the Court declines to reach this issue.

### 5.     Remand for Further Proceedings

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or exploration."  *INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002) (citations and quotation marks omitted); *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004).  Where additional administrative proceedings could remedy defects in the decision, remand is warranted.  *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).  The Court has determined that the record requires additional development, so remand is proper.

## III. CONCLUSION

For the foregoing reasons, the Joint Motion for Judicial Review is **GRANTED** in favor of Plaintiff.  The Court **REVERSES** the decision of the

Commissioner denying benefits and **REMANDS** the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with the findings presented herein.

**IT IS SO ORDERED.**

Dated:   September 29, 2022

Hon. Mitchell D. Dembin
United States Magistrate Judge

20cv2354-MDD